McKEOWN, Circuit Judge,
with whom M. SMITH, Circuit Judge, joins, specially concurring:
Jurisdictional rulings have an anodyne character that may suggest insensitivity to the plight of the parties, particularly in a case involving immigrant children whose treatment, according to former Attorney General Eric Holder, raises serious policy and moral questions.[1] But we must heed the Supreme Court’s admonition that “[fjederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.” Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (citations omitted). We did not reach the merits here because we hewed to the statute channeling federal court jurisdiction. That said, I cannot let the occasion pass without highlighting the plight of unrepresented children who find themselves in immigration proceedings. While I do not take a position on the merits of the children’s constitutional and statutory claims, I write to underscore that the Executive and Congress have the power to address this crisis without judicial intervention. What is missing here? Money and resolve — political solutions that fall outside the purview of the courts.
In fiscal year 2014, more than 60,000 unaccompanied minors made their way to the United States,[2] prompting the Department of Homeland Security to declare a crisis at our southern border.[3] Although the numbers dropped in fiscal year 2015, the surge has now reappeared. According to the Pew Research Center, “[t]he number of apprehensions of unaccompanied children shot up by 78%” during the first six months of fiscal year 2016.[4] Indeed, earlier “some Members of Congress as well as the Administration characterized the issue as a humanitarian crisis.”[5] The border crisis created what has been called a “perfect storm” in immigration courts, as children wend their way from border crossings to immigration proceedings.[6] The storm has battered immigration “courtrooms crowded with young defendants but lacking lawyers and judges to handle the sheer volume of cases.”[7]
*1040 The net result is that thousands of children[8] are left to thread their way alone through the labyrinthine maze of immigration laws, which, without hyperbole, “have been termed second only to the Internal Revenue Code in complexity” Castro-O’Ryan v. INS, 847 F.2d 1307, 1312 (9th Cir. 1987) (internal quotation marks omitted); see also Baltazar-Alcazar v. INS, 386 F.3d 940, 948 (9th Cir. 2004) (emphasizing the complexity of immigration laws and noting that lawyers may be the only ones capable of navigating through it). This reality prompted the Chief Immigration Judge to acknowledge that “[t]he demands placed on the [immigration] courts are increasing due to the unprecedented numbers of unaccompanied minors being placed in immigration proceedings. As a result there is .a growing need for support systems the [immigration] courts can use to effectively and efficiently manage the cases of unaccompanied minors.”[9]
Given the onslaught of cases involving unaccompanied minors, there is only so much even the most dedicated and judicious immigration judges (and, on appeal, members of the Board of Immigration Appeals) ' can do. See Amicus Curiae Brief of Former Federal Immigration Judges at 7. Immigration judges are constrained by “extremely limited time and resources.” Id. at 4. Indeed, those judges may sometimes hear as many as 50 to 70 petitions in a three-to-four hour period, id. leaving scant time to delve deeply into the particular circumstances of a child’s case.
In light of all this, it'is no surprise that then-Attorney General Holder took the position in 2014 that “[t]hough these children may not have a Constitutional right to a lawyer, we have policy reasons and a moral obligation to ensure the presence of counsel.”[10] But Congress has clearly — and repeatedly — indicated that these policy and moral concerns may not be addressed in the district court. Rather, these issues come initially within the Executive’s purview as part of the administrative removal process, with review available in the Courts of Appeals through the petition for review process.[11] See Maj. Op. at 1033-35.
To its credit, the Executive has taken some steps within this process to address the difficulties confronting unaccompanied and unrepresented minors. Through the Justice AmeriCorps program, the'government awarded $1.8 million to support living allowances' for 100 legal fellows who will represent children in removal proceedings.[12] The government has also partnered *1041 with the United States Conference of Catholic Bishops and the United States Committee for Refugees and Immigrants to provide legal representation to unaccompanied children.[13] The Executive Office for Immigration Review offers legal orientations for custodians of unaccompanied children in removal proceedings and it launched a pilot program to provide legal services to unaccompanied minors.[14]
Yet these programs, while laudable, are a drop in the bucket in relation to the magnitude of the problem — tens of thousands of children will remain unrepresented. A meritorious application for asylum, refuge, withholding of removal or other relief may fall through the cracks, despite the best efforts of immigration agencies and the best interests of the child. Additional policy and funding initiatives aimed at .securing representation for minors are important to ensure the smooth functioning of our immigration system and the fair and proper application of our immigration laws.
Eventually, an appeal asserting a right to government-funded counsel will find its way from the immigration courts to a Court of Appeals through the petition for review process. It would be both inappropriate and premature to comment on the legal merits of such a claim. But, no matter the ultimate outcome of such an appeal, Congress and the Executive should not simply wait for a judicial determination before taking up the “policy reasons and ... moral obligation” to respond to the dilemma of the thousands of children left to serve as their own advocates in the immigration courts in the meantime. The stakes are too high. To give meaning to “Equal Justice Under Law,” the tag line engraved on the U.S. Supreme Court building, to ensure the fair and effective administration of our immigration system, and to protect the interests of children who must struggle through that system, the problem demands action now.

. Attorney General Eric Holder, Remarks at the Hispanic National Bar Association 39th Annual Convention (Sept, 12, 2014), available at https://www.justice.gov/opa/speech/ remarks-attorney-general-eric-holder-hispanic-national-bar-association-39th-annual.

. William Kandel, Unaccompanied Alien Children: An Overview, Congressional Research ’ Service, 1 (May 11, 2016), available at https:// fas.org/sgp/crs/homesec/R43599.pdf.

. Julia Preston, U.S. Setting Up Emergency Shelter in Texas as Youths Cross Border Alone, N.Y. Times, May 16, 2014, available at http:// www.nytimes.com/2O14/05/17/us/us-sets-up-crisis-shelter-as-children-flow-across-border-alone.html?_r=0.

. Jens Krogstad, U.S. Border Apprehensions of Families and Unaccompanied Children Jump Dramatically, Pew Research Center, May 4, 2016, available at http://www.pewresearch. org/fact-tank/2016/05/04/us-border-apprehensions-of-families-and-unaccompanied-children-jump-dramatically/.

. See Kandel, supra note 2, at 1.

. ABA Commission on Immigration, A Humanitarian Call to Action: Unaccompanied Children in Removal Proceedings Present a Critical Need for Legal Representation, 1 (June 3, 2015), available at http://www. americanbar.org/content/dam/aba/ administrative/immigration/UACSstatement. authcheckdam.pdf (internal quotation marks omitted).

. Liz Robbins, Immigration Crisis Shifts from Border to Courts, N.Y. Times, Aug, 23, 2015, 'available at http://www.nytimes.com/2015/08/ 24/nyregion/border-crisis-shifts-as-undocumented-childrens-cases-overwhelm-courts.html.

. According to the Transactional Records Access Clearinghouse at Syracuse University, between 2011 and 2014, the number of juvenile cases in immigration courts leaped from 6,425 in 2011 to 59,394 in 2014. As of September 2015, children in more than 32,700 pending immigration cases were unrepresented.

. Memorandum from the Executive Office for Immigration Review, The Friend of the. Court Model for Unaccompanied. Minors in Immigration Proceedings (Sept. 10, 2014),

. See supra note 1.

. As discussed in the majority opinion, under the current statutory scheme, Congress . has recognized the "privilege of being .represented, at no expense to the Government, by counsel.” 8 U.S.C. § 1229a(b)(4)(A), Implementing regulations enacted by the Executive recognize the same limited privilege. See 8 C.f!r. § 238.1(b)(2).

. See Press Release, Department of Justice, Justice Department and CNCS Announce $1.8 Million in Grants to Enhance Immigration *1041 Court'Proceedings and Provide Assistance to Unaccompanied Children (Sept. 12, 2014), available at https://www.justice.gov/opa/pr/ justice-department-an4-cncs-announce-18-million-grants-enhance-immigration-court-proceedings.

. See Announcement of Award of Two Single-Source Program Expansion Supplement Grants To Support Legal Services to Refugees Under the Unaccompanied Alien Children’s Program, 79 Fed. Reg. 62,159-01 (Oct, 16, 2014).

. See Press Release, Department of Justice, EOIR Expands Legal Orientation Program Sites (Oct. 22, 20.14), available at https://www. justice.gov/eoir/pr/eoir-expands-legal-orientation-programs.